SIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERI BOWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 16-cv-00217 |
| | ) | |
| CHICAGO BOARD OF ELECTION | ) | |
| COMMISSIONERS, | ) | Hon. Gary Feinerman |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Sheri Bowen, through counsel, Frank Avila, and files her memorandum of law and the Declaration of Sheri Bowen (Exhibit A) in opposition to Defendant's motion for summary judgment, and respectfully requests that Defendant's motion for summary judgment be denied.

## Introduction

In summary (detailed below), Plaintiff was treated disparately for many years, and quickly replaced in the same job title by a Caucasian Male who was rapidly given $11,604 in pay increases over two years (from $61,488 to $73,092 annually).

Plaintiff dedicated her career to the Board, and was an exemplary employee for 24-1/2 years, never being disciplined or reprimanded during her tenure at the Board. She received complimentary performance reviews in 2004 and 2008.

From 2009 through 2014, Plaintiff was denied an assistant supervisor, while also being denied pay increases that were provided to other employees.

The Defendant's purported concern about the integrity of the Chicago Board of Election Commissioners is a far larger issue for the Board, and pre-dates

1

Plaintiff's alleged transgression of allowing up to 100 "too late" absentee ballots to be counted.

No lawsuits were filed, and no investigation were launched as a result of Plaintiff's mistake. Furthermore, the alleged mistake that Plaintiff has been accused of making was utterly negligible in a statewide election, did not deprive any voters of their right to vote, had no impact upon the Nov. 2014 election.

Plaintiff's alleged mistake is the type of "human error" that is not only understandable, but unavoidable in the circumstances facing the Plaintiff, with three times the number of absentee ballot applications, and far less support from the Board, than other departments.

Plaintiff has made a sufficient showing to establish her *prima facie* case.

**A.      Standard of Review.**

Summary judgment is appropriate only if the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

For purposes of a motion for summary judgment, the court "examines the record in the light most favorable to [Bowen], the non-moving party, resolving all evidentiary conflicts in her favor and according her the benefit of all reasonable inferences that may be drawn from the record." *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012), citing *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011).

To defeat summary judgment, a plaintiff need only raise a material issue of fact as to the believability of the employer's justification. *E.E.O.C. v. Target Corp.,*

460 F.3d 946, 960 (7th Cir. 2006); See also *Malozienc v. Pacific Rail Servs.,* 606 F.Supp.2d 837 (N.D.Ill. 2009).

**B.    Plaintiff Has Made a Sufficient Showing to Establish Her *Prima Facie* Case.**

Plaintiff has asserted claims of discrimination based upon her race (African-American) and gender (Female), against the Board, pursuant to Title VII. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff has made a sufficient showing to establish race and gender discrimination through inference. The analysis is as follows:

> To establish a *prima facie* case of discrimination a plaintiff must offer evidence that: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burks v. Wisconsin Dep't of Transportation,* 464 F.3d 744, 750-51 (7th Cir.2006). Once a *prima facie* case is established, a presumption of discrimination is triggered. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; see *Burks,* 464 F.3d at 751.

*Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Direct evidence of a discriminatory motive need not be provided to rebut summary judgment. *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712 (7th Cir. 2005).

The Seventh Circuit has adopted a flexible, common-sense, and fact based similarly-situated inquiry. *Id*. at 846. The inquiry was explained as follows:

> It asks "essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir.2007), aff'd, 553 U.S. 442, 128 S.Ct. 1951 (2008). There must be "sufficient commonalities on the key

> variables between the plaintiff and the would-be comparator to allow
> the type of comparison that, taken together with the other *prima facie*
> evidence, would allow a jury to reach an inference of discrimination."
> *Id.*

*Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). See also, *Weber v. Universities Research Ass'n, Inc.,* 621 F.3d 589 (7th Cir. 2010); *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908 (7th Cir. 2010) (comparative need not be clone and need not have been accused of identical misconduct), *Good v. University of Chicago Medical Ctr.,* 673 F.3d 670 (2012), *Crawford v. Indiana Harbor Belt RR Co.*, 461 F.3d 844, 845 (7th Cir. 2006) (rejecting tendency to require closer and closer degrees of similarity).

Further, "[t]he burden of establishing a *prima facie* case of disparate treatment is not onerous," which then leads to the reasonable inference that the employer acted with discriminatory intent. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981). The Seventh Circuit adopted the flexible, common sense analysis, applied as follows:

> The Supreme Court "never intended" the requirements "to be rigid,
> mechanized, or ritualistic ... [but] merely a sensible, orderly way to
> evaluate the evidence in light of common experience as it bears on
> the critical question of discrimination." *Furnco Construction Corp. v.
> Waters,* 438 U.S. 567, 577 (1978). The Court has cautioned that "precise
> equivalence... between employees is not the ultimate question."
> *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 283 n. 11
> (1976). The touchstone of the similarly-situated inquiry is simply
> whether the employees are "comparable." *Id.*, quoting *McDonnell
> Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

*Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012).

The Plaintiff need not establish that the alleged discriminator's race or gender be different from the Plaintiffs. *Oncale v. Sundowner Offshore Services.*, 523 U.S. 75 (1998); See also *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524 (7th Cir.

2003). The Supreme Court in *Oncale* explained the rationale for this approach as follows:

> Title VII's prohibition of discrimination "because of ... sex" protects men as well as women, *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U. S. 669, 682 (1983), and in the related context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own race. "Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Castaneda v. Partida,* 430 U. S. 482, 499 (1977). See also *id.*, at 515-516, n. 6 (Powell, J., joined by Burger, C. J., and REHNQUIST, J., dissenting). In *Johnson v. Transportation Agency, Santa Clara Cty.,* 480 U. S. 616 (1987), a male employee claimed that his employer discriminated against him because of his sex when it preferred a female employee for promotion. Although we ultimately rejected the claim on other grounds, we did not consider it significant that the supervisor who made that decision was also a man. See *id.*, at 624-625. If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination "because of ... sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.

*Oncale v. Sundowner Offshore Services, Inc*. 523 U.S. 75, 78-79 (1998).

A plaintiff can "stave off summary judgment and proceed to the pretext inquiry" by "produc(ing) evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner." *Montgomery v. American Airlines, Inc*., 626 F.3d 382, 394 (7th Cir. 2010) (citing *Elkhatib v. Dunkin Donuts, Inc.*, 497 F.3d 827, 831 (7th Cir. 2007). If the plaintiff produces such evidence, "the second and fourth prongs (of the prima facie case) merge." *Id.*

Plaintiff has asserted sufficient pretext to overcome Defendant's motion for summary judgment.

## C. Disparate Treatment of Plaintiff – Additional Work, Less Pay, Termination.

The parties agree that Plaintiff, Sheri Bowen, worked for the Board for over 24 years before her termination, that she had no prior disciplinary action of any

sort, and that no prior Board employee had been terminated for an inadvertent error. Defendant's Statement of Facts ("DSOF") par. 2, Plaintiff Additional Statement of Facts ("PASOF"), par. 1, 2, 9, 10.

Sheri Bowen's termination is highly suspicious, and an exceptional response based upon the alleged accusations. During the past 12 to 14 years, the Board has not terminated any other employee, and discipline was reserved for the worst offenses, and less drastic or damaging to an employee's career.

Dawn Downs, Plaintiff's manager, admitted that in her tenure at the Board, no other employee has been terminated for an employee error. PASOF par. 2. Ms. Downs acknowledged that the Board had used lesser methods of discipline, such as verbal and written warnings, and suspensions. PASOF par. 6, 7.

Ms. Downs acknowledged that even when employees were caught violating the anti-violence policy (with an alleged weapon involved) or intentionally falsifying documents (mileage reimbursement forms), such employees were not terminated by the Board. PASOF par. 7-8.

When an employee in Plaintiff's department was causing disruptions and was grossly insubordinate, Dawn Downs not only refused to discipline or terminate such employee, but refused to transfer him out of the absentee ballot department. Specifically, Sheri Bowen experienced overt and intentional gross insubordination from one of her assigned staff members, Alfonso Belt. PASOF par. 5. Mr. Belt went so far as to tell told Sheri Bowen that he did not recognize her as his supervisor, that he took direction only from Dawn Downs or Arlene Rios. Id. Additionally, Mr. Belt was very disrespectful to other employees, and even threatened to "slap the

shit out of" Sheri Bowen. Id.  Yet, Mr. Belt was neither terminated, nor disciplined or transferred out of the absentee department. Id.

Plaintiff established that she was passed over for raises between 2009 and 2013, while others received increases, and she was not provided an assistant manager from 2009 through 2014, though all other supervisors had an assistant. DSOF, par. 36. During this same time frame of 2009 through 2014, Plaintiff was given additional work duties, with no commensurate pay increase, because the Board made the decision not to provide an assistant supervisor to the absentee ballot department. DSOF par. 13, PASOF par. 18.

Effectively, by refusing to provide an assistant supervisor, the Board assigned more work to Plaintiff, than other supervisors. *Minor v. Centocor, Inc.* 457 F.3d 632, 634 (7th Cir. 2006) (assignment of more work is sufficiently adverse to be actionable).

Plaintiff can be compared to other employees at the Board, including other supervisors, assistant supervisors and subordinate level employees, because for purposes of evaluations, discipline, or termination, such actions were the sole responsibility of upper level management, including Dawn Downs, Kelly Bateman and/or Lance Gough. (DSOF, par. 4; PASOF, par. 16)

Although Plaintiff's job title was that of a supervisor, had no authority to discipline or terminate other employees. Plaintiff, as well as other staff, all reported to the same manager, Dawn Downs. As such, Plaintiff is in a comparable position to other employees at the Board that are reporting to managers, such as Dawn Downs.

**D.    Board's Stated Explanation for Termination Strain Credibility.**

The Board was concerned about its image, first and foremost, in the eyes of the Democratic Party and the Republican Party. The stated reasons for Plaintiff's termination, however, are unsupportable.

The Seventh Circuit explained the analysis as follows:

> the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground. E.g., *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir.2000). If it is the true ground and not a pretext, the case is over. If it is not the true ground, the employer may still be innocent of discrimination, *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146-47 (2000); he may for example have lied to conceal a reason that was discreditable but not discriminatory. See *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 657 (7th Cir.1991) (en banc). But the case **could not be resolved on summary judgment, because a trier of fact (judge or jury) would be entitled to infer a discriminatory motive from the pretextual character of the employer's ground.** *Reeves v. Sanderson Plumbing Products, Inc.*, supra, 530 U.S. at 147-48, 120 S.Ct. 2097; *O'Neal v. City of New Albany,* 293 F.3d 998, 1005 (7th Cir.2002).

*Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 417 (7th Cir. 2006). (emphasis added).

No person, whether familiar with elections or not, let alone the Executive Director, Lance Gough, his Assistant Executive Director, Kelly Bateman, or department Manager, Dawn Downs, could have honestly believed the Board's explanation to terminate Plaintiff, nor believed the processing of less than 100 "too late" ballots was at all a "major" mistake in an election with 668,033 ballots cast in Chicago alone. The Board's stated explanation was a pretext, or a deliberate falsehood.

Evidence of untruth permits a finding of discrimination. *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133 (2000); *Hicks*, 509 U.S. at 511 (1993); *Anderson v. Baxter Healthcare Corp*., 13 F.3d 1120, 1123 (7th Cir. 1994). The Board's stated reasons

is patently untrue and factually unsupported, and reason enough to deny Defendant's motion for summary judgment. *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416 (7th Cir. 2006)

"At the summary judgment stage, the district court evaluates whether plaintiffs have produced evidence from which a fact-finder could infer that the employer lied about the reasons" for the employer's action. *Bell v. E.P.A.,* 232 F.3d 546, 551 (7th Cir. 2000). Circumstantial evidence that impeaches the Board's explanation helps establish pretext. *Reeves v. Sanderson, Plumbing Prods, Inc*., 530 U.S. 133 (2000). As in *Bell*, *supra*, the Plaintiff has offered evidence that creates an inference that the Board was dishonest in its explanation for terminating the Plaintiff's career at the Board.

The Board also takes the Plaintiff's reference to her omission as a "major mistake" wholly out of context – the Plaintiff assumed responsibility because she was the department's supervisor. Other than the colloquial understanding of "major" the Board offered no evidence of harm to the Board, nor jeopardy of a single voter's ballot access right. The Board's argument is simply overblown.

The Republican Party expressed interest in the election well before the Nov. 4, 2014 election day.  DSOF par. 21, PASOF 16, Exh. F. The concerns pertained to the Treasurer election. Id. The attorney for the Democratic Party was a gentleman named "Zack" and alleged by Dawn Downs to have been a leader of the Democratic Party. DSOF par. 21-22.

The election at issue between Cross and Frerichs for Treasurer in Nov. 2014 was a statewide race that had 3,680,417 ballots cast. DSOF 22, Exh. D. In Chicago alone, there were 668,033 ballots cast. Id. It strains credibility to argue that less than

100 "too late" ballots that were inadvertently counted, could have affected either the election results, or the Board's reputation.

The processing of less than 100 "too late" absentee ballots by staff members did not jeopardize the election and such claims are false. Id. Furthermore, there were no lawsuits filed, no state's attorney investigation, no criminal charges or other repercussions. Id.

The Board has an ongoing, and serious, challenge to its customs and practices that is currently pending before Hon. Robert Blakey. *Rebecca A. Kerlin, et al. vs. Chicago Board of Elections and James Scanlon*, No. 16-cv-7424 (N. Dist.Ill.) before Hon. Robert Blakey. PASOF par. 12-15.

Furthermore, no lawsuits were filed, no state's attorney investigations commenced, no criminal charges filed, and the Board experienced no other repercussions. PASOF par. 21-22, Plaintiff's Declaration.

Logically, with an election where 668,033 ballots are cast in Chicago alone, there will be some inaccuracies. As Hon. Robert Blakey noted, "some 'errors and irregularities' are inevitable." (Exh. G at page 9 PageID#:155) Therefore, it has been recognized, inherent in the process, that mistakes will occur, and the Board is obligated to set in place procedures to minimize such errors.

For the Board to react so harshly to the honest mistake of one of its own employees, and terminate Plaintiff, in light of its history of never having terminated an employee for errors, underscores the ulterior discriminatory motivations of Board employees. Deviations from the Board's usual practice of not terminating employees for inadvertent mistakes or even intentional violations indicates a pretextual reason. See e.g., *Chaney v. Plainfield Healthcare Center*, 612 F.3d

10

908 (7th Cir. 2010); *Davis v. Wis. Dep't of Corrections*, 445 F.3d 971 (7th Cir. 2006); *Rudin v. Lincoln Land Cmty Coll.*, 420 F.3d 712 (7th Cir. 2005); *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2001) (poorly defined grounds and inconsistent application).

### E.     Termination Based Upon Race and Gender.

Plaintiff was performing up to the Board's expectations for the duration of her employment of 24-1/2 years, and is only alleged to have made her first mistake on or about Nov. 5, 2014, when she took responsibility for failing to remind her staff to follow James Scanlon's procedures, that were printed and distributed to all staff.

It is not reasonable, or legitimate, to expect perfection with zero tolerance from any employee in the post-election context facing the Plaintiff. Dawn Downs was pressuring the absentee department to process three times the number of ballots, without support of an assistant supervisor to assist with overseeing staff, at an expedited pace.

Ever election, however, there will be mistakes, and it would be foolish to believe that every person's vote is counted with 100% precision in a city as large as Chicago, with its 2,069 precincts (or voting locations). Exh. D. This is evidenced by the Kerlin allegations which shows that election day results that are reported, are not accurate when audited. Exh. F, Exh. G.

Staff members at the Board all reported to management level employees, including Dawn Downs, Kelly Bateman, and Lance Gough. DSOF par. 4, PASOF

par. 3. Plaintiff had no authority to discipline or terminate employees. PASOF par. 4. Therefore, all supervisory and subordinate employees at the Board, who often worked in different departments during the non-election times, were similarly situated to Plaintiff. All such employees reported to the same management.

Plaintiff need not show, for *prima facie* case purposes, a similarly situated comparator, but rather must show only that the employer sought someone else to do plaintiff's work after the termination. *Pantoja v. American NTN Bearing*, 495 F.3d 840, 846 (7th Cir. 2007). "Once an employee can show (in the sense of raising an issue of material fact at the summary judgment stage) that he is meeting his employer's legitimate expectations (the second element), then the fact that the employer needs to find another person to perform that job after the employee is gone raises the same inference of discrimination that the continuation of a search does in the hiring situation." *Id.* see also, *Contreras v. Suncast Corp*., 237 F.3d 756 (7th Cir. 2001).

Construing the affidavits, depositions and other evidence proffered by the parties in a light most favorable to Plaintiff, the termination of Plaintiff for an inadvertent (or negligent at most) "human" mistake was highly anomalous, and strains credibility PASOF par. 5-11. See *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995) (articulated reason has no basis in fact and insufficient to warrant action taken).

Plaintiff was similarly situated to most other employees at the Board, including other supervisors, assistant supervisors and subordinate level employees, because for purposes of evaluations, discipline, or termination, such actions were

the sole responsibility of upper level management, including Dawn Downs, Kelly Bateman and/or Lance Gough. (DSOF, par. 4; PASOF, par. 16)

Plaintiff has proffered evidence of employee transgressions including gross insubordination and threats of physical violence by Alfonso Belt (PASOF, par. 5), violence at the workplace involving a weapon, ghost payrolling, inappropriate website content, and mistakes in other departments, for which no employee was ever terminated. (PASOF, par. 10)

Plaintiff has shown that many other levels of employee transgressions, from negligent to outright fraudulent conduct, did not result in even one employee being terminated. Id. The Board's was certainly familiar with mistakes occurring when hundreds of thousands of ballots are being manually handled through the process, by thousands of volunteers and staff. The Board's procedure has, prior to the Plaintiff's termination, been to address the mistake, and move on, understanding that people are not machines, and that inadvertent mistakes will occur. PASOF par. 11.

Plaintiff was then quickly replaced by a Caucasian Male, Steve Cieslicki, who was initially in February 2015 still reported at his same income as his prior position. This is so because the budget is approved annually, and as the Plaintiff learned, requests for pay increases had to be submitted in May or June, in order to receive a raise the following year. DSOF par. 37.

Mr. Cieslicki in the year 2017 is publicly reported at the City of Chicago's official website as earning $73,092. Exh. H. This translates to a raise of $11,604 between May 2015 and May 2017, and rate of increases that exceeds Plaintiff's $0.00 per year increases between 2009 and 2013. The evidence in a light most

favorable to Plaintiff indicates that Caucasian Males are not only paid more, but receive larger raises in a shorter amount of time that African-American Women in the same job position at the Board.

The Board's stated reason for termination is not only a deviation from the Board's long standing custom and practice, but also not a credible or legitimate basis for Plaintiff's termination. She is the only Board employee to have been terminated for a human error, and then replaced by a Caucasian Male increasing his salary more rapidly than provided to Plaintiff.

WHEREFORE, Plaintiff, Sheri Bowen, through counsel, Frank Avila, respectfully requests that Defendant's motion for summary judgment be denied, and that this matter proceed to trial before a jury.

Respectfully submitted,
SHERI BOWEN

By:     s/ Frank Ávila
Frank Ávila, Esq. – Attorney for Plaintiff

Frank Ávila, Esq.
Ávila Law Group, LLC
6601 N. Avondale
Suite 203
Chicago, IL 60631
Telephone: (773) 671-3480
Facsimile: (773)763-2301
Email: frankavilalaw@gmail.com

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHERI BOWEN,                              )
                                          )
        Plaintiff,                        )
v.                                        )       No. 16-cv-00217
CHICAGO BOARD OF ELECTION                 )
COMMISSIONERS,                            )       Hon. Gary Feinerman
                                          )
        Defendants.                       )

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that on May 24, 2017, a copy of the foregoing pleading was served upon counsel for Defendants via the ECF/CM filing system which delivers copies via electronic mail to all counsel of record including counsel for Defendant:

Dan Noland
Dykema
10 S. Wacker Dr. #2300
Chicago, IL 60606
Email: **DNoland@dykema.com**

_____s/ Frank Avila_____
Attorney for Plaintiff

15