UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERI BOWEN, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 217 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sheri Bowen sued her former employer, the Board of Election Commissioners of Chicago, in state court, alleging that it discriminated against her on the basis of her race and sex in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, that it discharged her in retaliation for not performing illegal activities, and that it violated the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/20. Doc. 1-1. The Board removed the suit to this court. Doc. 1. The court dismissed the retaliation and IWA claims, leaving only the Title VII claims, Doc. 18, on which the Board now moves for summary judgment, Doc. 72. The motion is granted in part and denied in part.

**Background**

The following facts are stated as favorably to Bowen as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering the Board's motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

Bowen is an African-American woman. Doc. 13 at 2-3 ¶ 5. She worked for the Board from 1990 until her termination in November 2014. Doc. 82 at 1 ¶ 2. From 2004 through her termination, Bowen was the Supervisor of Absentee Voting, a position responsible for reviewing

1

absentee ballots for timeliness and overseeing and coordinating staff in conducting that review. *Id*. at 1, 3 ¶¶ 3, 7-8.

The events giving rise to Bowen's firing took place during the general election of November 4, 2014. *Id*. at 5 ¶ 17. In the Board's view, Bowen did not properly screen untimely absentee ballots that were dated November 5, 2014. *Id*. at 6 ¶ 18. While conceding that she committed a "major mistake," Bowen contends that she merely failed to verbally remind staff to check for untimely ballots. *Id*. at 4-6 ¶¶ 13, 17, 19. The mistake involved nearly one hundred absentee ballots. *Id*. at 7 ¶ 22; Doc. 82-2 at 35.

The Board terminated Bowen on November 11, 2014. Doc. 82 at 9 ¶ 26. The Board contends that the termination was based on Bowen's failure to meet its expectations; Bowen counters that her termination was based on her race and sex. *Ibid*. Bowen acknowledges that some discipline, such as a suspension, would have been warranted, but submits that termination was too severe. *Id*. at 10 ¶ 29.

Bowen was replaced by Steven Cieslicki, a white male. *Id*. at 13 ¶ 37. Cieslicki's salary in 2015 was $61,488, almost $10,000 less than Bowen's $71,364 salary at the time she was fired. *Id*. at 3, 13 ¶¶ 9, 37. Cieslicki later received a promotion and has been earning a $73,092 salary since 2016. *Id*. at 17 ¶ 21.

Bowen asserts that she experienced "gross insubordination" from one of her staff members, Alfonso Belt, who threatened physical violence. *Id*. at 14 ¶ 5. The Board purports to dispute this fact, but its response does not contradict the events Bowen describes; instead, it states that efforts were made to ameliorate Bowen's relationship with Belt and that Bowen was able to maintain a productive relationship with him. Doc. 87 at ¶ 5. This adds context, but does not challenge the occurrence of Belt's behavior, so this fact is admitted.

Bowen also asserts that during an altercation between two other employees, one threatened to use a letter opener as a weapon against the other, and that neither was terminated. Doc. 82 at 15 ¶ 8. The Board does not challenge these facts, except for disputing the use or threatened use of a letter opener as a weapon. Doc. 87 at ¶ 8. Upon reviewing the record, the court agrees with the Board; the testimony cited by Bowen supports only that there was a letter opener on the floor, not that an employee used or threatened to use it as a weapon. Doc. 82-3 at 9-10. The court thus accepts as true the existence of the altercation, but not the use or threatened use of a letter opener as a weapon.

Bowen further asserts that "[t]here were numerous incidents of employee conduct that was worse than conduct alleged against Plaintiff, for which employees were not terminated." Doc. 82 at 15 ¶ 10. In response, the Board states that it "disputes the facts in this paragraph," Doc. 87 at ¶ 10, but it does not support its denial with "specific references to the affidavits, parts of the record, and other supporting materials relied upon," as required by Local Rule 56.1(b)(3)(B). Normally, this would result in the court deeming admitted Bowen's statement. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883-84 (7th Cir. 2012) ("[D]istrict courts are entitled to expect strict compliance with Local Rule 56.1."). However, Bowen's statement that unnamed employees' misdeeds were "worse" than hers is conclusory, not factual, and thus not proper under Local Rule 56.1. *See Greer v. Bd. of Educ. of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001) (affirming the district court's rejection of a Local Rule 56.1 assertion because it consisted of "generalized self-serving legal conclusions, rather than particularized statements of fact").

Accordingly, the court accepts as true that other employees engaged in misconduct, but does not accept as true that the misconduct was worse than Bowen's.

Bowen also asserts that the absentee ballot department had an assistant supervisor through 2009, but that the Board from 2009-2014 refused to fill the position. Doc. 82 at 17 ¶ 18. (Bowen's Local Rule 56.1(b)(3)(C) statement actually says "supervisor" instead of "assistant supervisor," *ibid*., but that must have been a typographical error.) Bowen supports this assertion with averments in her own declaration that "every department at the Board has supervisor and assistant supervisor positions" and that she requested an assistant but was told it was impossible for budgetary reasons. Doc. 82-1 at ¶¶ 4, 28. Bowen's declaration is based on personal knowledge; as a long-time Board employee, she was in a position to understand staffing policy. Accordingly, for summary judgment purposes, the court will credit Bowen's assertion that her position traditionally had an assistant, but that she did not have one from 2009-2014.

Finally, Bowen avers that, "[b]etween 2009 and 2013, I was not given pay increases, while other supervisors and management employees received pay raises." Doc. 82 at ¶ 19. In disputing that assertion, the Board says that "Plaintiff's income was significantly increased over the 24 years that she worked at the Board, including in 2013." Doc. 87 at ¶ 19. The record does reflect that Bowen received a raise of approximately $2,000 in 2013. Doc. 82-2 at 16. But that does not contradict Bowen's averment that *between* 2009 and 2013—that is, from 2009-2012—she did not receive raises while other supervisors and management employees did. Thus, the court deems that fact admitted, with the understanding that Bowen received a raise in 2013.

## Discussion

The Board moves for summary judgment on all of Bowen's claims. Until recently, plaintiffs in the Seventh Circuit could avoid summary judgment in employment discrimination

4

cases under either the direct or indirect methods of proof. *See*, *e.g.*, *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016); *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1148-49 (7th Cir. 2015). Under the direct method, the court would evaluate whether the plaintiff had "present[ed] sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014); *see also Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Under the indirect method created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff could shift to the defendant the burden of proof on the question of intent. *See id*. at 802. Specifically, the plaintiff first had to make a *prima facie* case, "showing that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment." *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016) (internal quotation marks omitted). If the plaintiff made her *prima facie* case, the burden shifted to the defendant to give a non-discriminatory reason for treating the plaintiff the way it did, and if the defendant met *its* burden, the burden shifted back to the plaintiff to show that the defendant's explanation was a pretext. *See McDonnell Douglas*, 411 U.S. at 802, 804.

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit eliminated the direct-and-indirect-method framework, stating that "[t]he time has come to jettison these diversions and refocus analysis on the substantive legal issue." *Id*. at 764. The substantive legal issue in *Ortiz* was "[w]hether a reasonable juror could conclude that Ortiz would have kept his job if he had a different ethnicity, and everything else had remained the same." *Ibid*. The district court appeared to have considered some evidence under the direct method but not under the indirect method, and vice versa, *id.* at 763, and the Seventh Circuit held

5

that to be reversible error, *id*. at 767. In the process, the Seventh Circuit explicitly overruled numerous decisions "to the extent that these opinions insist on the use of the direct-and-indirect framework." *Id*. at 765-66. *Ortiz* also overruled precedents that instructed district courts to determine under the direct method whether the plaintiff had presented a "convincing mosaic" of circumstantial evidence. *Id*. at 764-65. *Ortiz* makes clear, though, that it did not undermine "the burden-shifting framework created by *McDonnell Douglas*":

> Today's decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand. We are instead concerned about the proposition that evidence must be sorted into different piles, labeled "direct" and "indirect," that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole. That conclusion is consistent with *McDonnell Douglas* and its successors.

*Id*. at 766.

To survive summary judgment, then, a plaintiff must present evidence that, considered as a whole, would allow a reasonable juror to conclude that she was discriminated against due to a protected characteristic, suffering an adverse employment action as a result. *See Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 899 (7th Cir. 2016). *McDonnell Douglas* identifies one pattern of evidence that would enable a reasonable juror to find discrimination—namely, a pattern showing that the plaintiff belonged to a protected class, met her employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class and who were treated better, provided that the defendant fails to articulate a reasonable alternative explanation or the plaintiff shows that the proffered alternative explanation is a pretext. But the *McDonnell Douglas* pattern is just one way that the record evidence could enable a reasonable juror to find discrimination. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that the *McDonnell Douglas* method is "a common, but not exclusive, method of establishing a triable

6

issue of intentional discrimination"). A court must not confine its analysis to *McDonnell Douglas* (unless the plaintiff limits herself to the *McDonnell Douglas* framework) or treat some evidence as relevant under *McDonnell Douglas* but not to the broader question whether "a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765.

Bowen relies exclusively on the *McDonnell Douglas* framework. Starting with the *prima facie* case, Bowen satisfies the first element because she is a member of a protected class— actually two, African-American and female. She also meets the third element, which requires a showing of an adverse employment action; the termination and denial of raises suffice, and the court will assume without deciding that the denial of an assistant does so as well. The only elements of the *prima facie* case in dispute are the second, whether Bowen met the Board's legitimate performance expectations, and the fourth, whether she has identified any similarly situated individuals outside the protected class who were treated better than she was. Where there is evidence "that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merge, allowing the plaintiff to establish a prima facie case by establishing that similarly situated employees were treated more favorably." *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 492 (7th Cir. 2014); *see also Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013). To establish unequal treatment, Bowen "must identify a comparator who is directly comparable to her in all material respects … to eliminate other possible explanatory variables." *Williams v. Office of Chief Judge of Cook Cnty.*, 839 F.3d 617, 626 (7th Cir. 2016) (ellipsis in original) (internal quotation marks omitted).

In addressing whether the employer engaged in unequal treatment, the court must "conduct a common-sense examination" of potential comparators, who "need not be identical in every conceivable way" to the plaintiff. *Perez*, 731 F.3d at 704 (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 847 (noting that there is no "magic formula" for identifying relevant comparators and that "the similarly-situated inquiry should not devolve into a mechanical, one-to-one mapping between employees") (internal quotation marks omitted). In the usual case, it suffices that a comparator and the plaintiff "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman*, 667 F.3d at 847 (internal quotation marks omitted); *see also Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2007). "Ultimately, the crux of the issue is whether [the plaintiff's] and [the comparator's] misdeeds were 'sufficiently distinct' to distinguish meaningfully between them at summary judgment, or whether a jury could reasonably find they were comparable." *Perez*, 731 F.3d at 705.

Bowen admits that she was responsible for overseeing absentee ballot processing and screening out untimely ballots. Doc. 82 at 2-3 ¶¶ 7-8. She further admits that she failed to meet this responsibility for the November 2014 general election, a failure that resulted in nearly one hundred untimely absentee ballots being counted. *Id.* at 4-7 ¶¶ 13, 17, 19, 22. She concedes that this was a "major mistake" and that some discipline would have been appropriate, but says that termination was too severe. *Id.* at 6, 10 ¶¶ 19, 29.

On this record, no reasonable juror could find that Bowen met the Board's legitimate expectations for purposes of her termination claim. That said, the court recognizes that Bowen

can show that the Board applied its legitimate expectations in a disparate manner, the second and fourth elements of the *McDonnell Douglas prima facie* analysis merge and are satisfied. *See Taylor-Novotny*, 772 F.3d at 492. At this point, then, the court must ask whether similarly situated employees outside Bowen's protected classes were treated more favorably in terms of how the Board applied its legitimate expectations. *Ibid*.

Belt is the first potential comparator identified by Bowen. Belt caused disruptions and was grossly insubordinate, told Bowen that he did not recognize her as his supervisor, and was disrespectful and threatened to "slap the shit out of" her. This is awful, but it does not make Belt "similarly situated" for the purpose of *McDonnell Douglas*. As to her claim that she was terminated due to her race, Bowen does not establish that Belt was outside her protected class; that is, she does not show that he was not African-American. A plaintiff seeking to establish a *prima facie* case must offer comparators outside the protected class; absent such evidence, the comparator is meaningless. *See Kuttner*, 819 F.3d at 976; *Ballard v. Ill. Cent. R.R. Co.*, 2017 WL 201362, at *6 (N.D. Ill. Jan. 16, 2017) (in granting summary judgment for the defendants, noting that "plaintiff does not even identify the second comparator's race").

Nor is Belt a suitable comparator for Bowen's claim that she was terminated due to her sex. A comparator is similarly situated only if he or she "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his or her] conduct or the employer's treatment of [him or her]." *Coleman*, 667 F.3d at 847. Belt's misconduct, while unacceptable, was not similar to Bowen's. Bowen's misconduct concerned the administration of an election, which is the Board's core mission, and it was no small error to count the nearly one hundred untimely absentee ballots. Some elections are decided by very narrow margins. The 2000 presidential race was decided by 537 votes in the entire State of Florida. *See* "Official

9

Results, November 7, 2000 General Election," available at

https://enight.elections.myflorida.com/Index.asp?ElectionDate=11/7/2000&DATAMODE=

(visited July 31, 2017). Local elections have been decided by even narrower margins; for example, the 2014 runoff in the election for Tenth Ward Chicago alderman was decided by twenty votes. *See* "2015 Municipal Runoffs – 4/7/15 – Alderman 10th Ward," available at

http://www.chicagoelections.com/en/wdlevel3.asp?elec_code=9 (visited July 31, 2017). (This data is subject to judicial notice under Federal Rule of Evidence 201(b)(2). *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[T]he district court may … take judicial notice of matters of public record … ."); *Badillo v. City of Stockton, Cal.*, 956 F.2d 884, 887 n.1 (9th Cir. 1992) ("We have held that election results are an appropriate subject of judicial notice.").) Given the obvious and extremely high stakes of counting valid absentee ballots and excluding late ones, the Board was entitled adopt more stringent disciplinary policies for workplace violations involving election administration than those involving garden variety misconduct like insubordination. As the Seventh Circuit has cautioned, courts "do not sit as a super-personnel department" with the aim of second-guessing an employer's wisdom about the suitability of various disciplinary measures. *See Harris v. Warrick Cnty. Sherriff's Dept.*, 666 F.3d 444, 449 (7th Cir. 2012).

In a further effort to identify comparators for her termination claim, Bowen submits that "other employees" who engaged in misconduct were not terminated. Doc. 80 at 6. As noted, while a proper comparator need not be identical in all ways to the plaintiff, the plaintiff must demonstrate that there are "enough common factors … to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Coleman*, 667 F.3d at 847. Although there is no "magic formula," this is generally accomplished by showing that the

plaintiff and the proposed comparator worked underneath the same supervisor, were subject to the same standards, and committed comparable offenses. *Ibid*.

Bowen's evidence concerning "other employees" falls short. Her Local Rule 56.1(b)(3)(C) statement does not identify their race or sex and offers no information about their supervisors. Although the other employees' sex might be gleaned from the record, Bowen does not set forth that data in her Local Rule 56.1(b)(3)(C) statement, where it is required to be. *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004) ("In granting the Board's motion for summary judgment, the court explained that it had considered *only the facts in the parties' Local Rule 56.1 Statements of Material Facts*, as it was entitled to do.") (emphasis added); *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 2014 WL 4344095, at *8 (N.D. Ill. Sep. 2, 2014) ("[The] Local Rule 56.1 … statement … is the only appropriate vehicle to present facts on summary judgment."). And although Bowen's Local Rule 56.1(b)(3)(C) statement gives *some* description of the other employees' misconduct—that it consisted of "ghost payroll allegations, inappropriate content on Board computers, knowingly picking up checks for a person that resided outside of Chicago, and workplace altercations involving a weapon," Doc. 82 at 15 ¶ 10—Bowen offers no basis to conclude that this misconduct is comparable to misconduct that goes directly to election integrity, which lies at the heart of the Board's mission. Thus, even accepting her vague factual assertions as true, Bowen has not met her evidentiary burden of setting forth comparators for her claim that she was terminated due to her race or sex.

This would be so even if the court looked beyond Bowen's Local Rule 56.1(b)(3)(C) statement to evidence in the record. The evidence concerning other employees' misconduct comes primarily from her declaration, Doc. 82-1 at ¶ 31; the other evidence she cites either duplicate her declaration or are so vague as to be worthless. The declaration does not identify

11

the other employees' races, so it can support only Bowen's sex discrimination claim. And the only comparators listed who appear to be men are Robert Sawicki, Oscar Petersen, and Tong Tran. Doc. 82-1 at ¶¶ 31(b)-(d). Bowen does not identify those employees' supervisor(s), so she does not show that they reported to the same supervisor as she did. In the case of Tran, Doc. 82-1 at ¶ 31(d), it appears that the discipline imposed was, effectively, termination, so he was subjected to the same discipline as Bowen. The declaration does not give any information to suggest that Sawicki's, Petersen's, and Tran's positions were similar to Bowen's. And finally, as was the case with Belt, nothing in Bowen's declaration or legal brief establishes that the other employees' misconduct—garden-variety workplace rule violations that do not relate directly to the Board's core mission of fair and accurate election administration—should be considered comparable to Bowen's.

As noted, *Ortiz* holds that courts must look beyond the *McDonnell Douglas* analysis to examine whether the plaintiff has presented evidence that, considered as a whole, would allow a reasonable juror to conclude that the defendant violated Title VII. However, Bowen put all her eggs in the *McDonnell Douglas* basket, thus forfeiting any argument that she could survive summary judgment outside of the *McDonnell Douglas* framework. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in [a] response … ."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the non-movant] lost the opportunity to urge it in … the district court … .").

Even had Bowen not forfeited this point, the Board presents a credible, non-discriminatory ground for Bowen's dismissal, supported by the record. Bowen concedes that she committed a serious workplace infraction that merited discipline, and argues only that termination was so unreasonably harsh that it must have resulted from discrimination. But Bowen provides no evidence to support this argument, apart from the putative comparator evidence that, for the reasons discussed above, is insufficient. Thus, the evidence considered as a whole would not permit a jury to find in Bowen's favor on her termination claim.

Bowen's claims based on the failure to provide her with an assistant supervisor fail as well. She again provides no information in her Local Rule 56.1 statement regarding the race or sex of the supervisors who were provided an assistant or any detail as to their responsibilities. That Bowen shared the same formal title (supervisor) as those other supervisors does not, in and of itself, make them similarly situated to her. *See Carothers*, 808 F.3d at 1151 ("[P]laintiff [can]not survive summary judgment when she failed to show how alleged comparators were similarly situated other than that they had the same job title."); *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 538 (7th Cir. 2013) (same).

As for her salary claim, Bowen contends that she was passed over for raises from 2009-2013 while others received raises, and that she was replaced by a white man who was paid more than she was. *Id*. at 7, 13-14. The unnamed employees who received raises are not appropriate comparators. Even assuming that Bowen was denied raises when others received them, she offers no detail as to which employees received raises, whether they were outside the protected class, or whether their circumstances were such that they were similar to her in all material respects. As a result, Bowen cannot proceed to trial on a pay discrimination theory based on those unnamed employees.

Bowen's other comparator, Cieslicki, a white male, is an appropriate comparator because he occupies the same position Bowen did; indeed, he replaced her. It is undisputed that Cieslicki presently makes more than Bowen did at the time of her termination. In its initial brief, the Board observed that when Cieslicki first took over for Bowen, he made $10,000 less than she did. Doc. 73 at 12. Bowen's response contends that although Cieslicki *started* at a lower salary, he received a raise of approximately $11,000 in 2016. Doc. 80 at 13-14. That raise was significantly greater in both absolute and percentage terms than any of Bowen's raises; she received a $2,000 raise in 2013 and no others after 2009. This is sufficient to make out a *prima facie* case of pay discrimination and shift the burden to the Board to articulate a non-discriminatory reason for the disparity.

One could envision the Board having argued that the difference between Cieslicki's new salary and Bowen's final salary is small enough that it might be explained by a cost of living adjustment. But the Board does not offer that or any other explanation; indeed, in its reply brief, the Board did not respond to Bowen's argument at all, thus forfeiting the point for purposes of summary judgment. *See Nichols*, 755 F.3d at 600 ("The non-moving party waives any arguments that were not raised in [a] response … ."); *G&S Holdings*, 697 F.3d at 538 ("We have repeatedly held that a party waives an argument by failing to make it before the district court."). Accordingly, summary judgment is denied as to Bowen's pay discrimination claim as it pertains to a comparison with Cieslicki.

**Conclusion**

The Board's summary judgment motion is granted in part and denied in part. The motion is denied as to Bowen's claim that she was the victim of pay discrimination due to the disparity

between her salary and Cieslicki's; that claim will proceed to trial. On all of Bowen's other claims, the Board is entitled to summary judgment.

August 4, 2017

_____
United States District Judge